In re the **MARRIAGE OF Craig GRAZIANO** and Diane S. Weissman.

Upon the Petition of

Craig Graziano, Appellee,

And Concerning

Diane S. Weissman, Appellant.

No. 97–416.

Supreme Court of Iowa.

Feb. 18, 1998.

Jerry R. Foxhoven, Des Moines, for appellant.

Susan L. Ekstrom, Des Moines, for appellee.

HARRIS, Justice.

Our choice in this appeal from a child custody determination is unusually difficult. This difficulty is not the common one—choosing which of two competing parties should be awarded custody, inevitably an onerous task. The problem here is whether we can reach the merits and resolve the most crucial phase of a sad dispute. The challenged trial court determination was unquestionably an interlocutory ruling and therefore not appealable as a matter of right. As happens, not routinely but with disappointing frequency, the disappointed party filed a notice of appeal without first obtaining the required permission to bring an appeal in advance of final judgment.

The omission did not come to light until briefs were filed. When the case was thus made ready for submission, and we were alerted to the flaw, we invited comment on the status of the appeal. Counsel made no claim the challenged trial court order was final but joined in the request that we apply a rule under which we can treat the notice of appeal as a request to bring an interlocutory one. They ask us to grant that request and consider the matter on its merits. For the reasons that follow, we are obliged to deny the request and dismiss the appeal.

Because we do not reach the merits, a cursory summary of the facts will suffice. The parties, Craig Graziano and Diane S. Weissman, were married in 1987. Two years later they adopted two children from the Amazon rain forest in Peru. The children are biological siblings. Both parents possess commendable qualities, and both would provide the children with excellent care. It seems both would further the relationship between both the children and the other parent.

■ Craig brought this dissolution of marriage proceeding, and Diane was awarded temporary physical care and custody of the children. Following trial the district court however awarded Craig the primary care of the children. The decree addressed only the children's custody, and specified that other issues would be reserved for further order of the court.[1] Without waiting for resolution of those issues, Diane filed a notice of appeal.

■ I. Under Iowa rule of appellate procedure 1 final orders (except those not involving amounts specified in rule of appellate procedure 3) are appealable as a matter of right. Interlocutory rulings can be appealed under rule of appellate procedure 2, but only with permission of this court or one of its justices. Obtaining this permission is jurisdictional. *Banco Mortgage Co. v. Steil*, 351 N.W.2d 784, 786 (Iowa 1984); *see* Iowa R.App. P. 1, 2 advisory committee's notes. We obviously attach supreme importance to the finality requirement. It is no coincidence that the requirement is spelled out in the very first two of our rules of appellate procedure.

Though it can become harsh, the rule requiring parties to await final judgment before appealing as a matter of right is based on common sense and is decidedly in the public interest. It is necessary in order to facilitate the processing of cases both during the trial and appellate stages. It facilitates the trial process by assuring an uninterrupted one. To allow parties to delay or interrupt the trial by appealing any order as a matter of right would lead to obvious chaos and would accord a disastrous advantage to the party with more resources. *See State v. O'Dell*, 456 N.W.2d 910, 912 (Iowa 1990) ("hands-on" governance of a trial should be conducted by the trial judge—not the appellate court). The rule also reduces the number of appeals, a matter of prime importance in view of scarce judicial resources. *Id.*

But any rule—like any horse—can be ridden too far. The line between whether a challenged order is final or interlocutory can become blurred indeed. *See McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 596–97 (Iowa 1971). Even though the line can become blurred, a miscalculation by counsel on finality can be disastrous. *See Helland v. Yellow Freight Sys., Inc.*, 204 N.W.2d 601, 605 (Iowa 1973). To soften some of its

---

1. Trial courts should not issue decrees in dissolution cases in which issues are reserved. *In re*

*Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978).

harshness, rule 1 was amended in 1980 to add subparagraph c (now subparagraph d). It provides:

> If an appeal to the supreme court is improvidently taken because the order from which appeal is taken is interlocutory, this alone shall not be ground for dismissal. The papers upon which the appeal was taken shall be regarded and acted upon as an application for interlocutory appeal under Iowa Rule of Appellate Procedure 2, as if duly presented to the supreme court at the time the appeal was taken.

■■■■ . As indicated, the parties join in asking us to apply rule 1(d) and proceed to the merits. The temptation to do so, especially in a child placement case, is great. We nevertheless cannot and do not grant permission under rule 1(d) merely because child placement is implicated. *See In re W.D. III,* 562 N.W.2d 183, 186 (Iowa 1997) (dismissing appeal from interlocutory order in parent-child termination case). Child custody cases are in fact especially appropriate for demanding compliance with the requirements for obtaining permission. We of course give child placement cases favored status, and, under rule of appellate procedure 17, resolve such appeals with special urgency. It is for this very reason that child custody cases should not be subject to interruption during the trial process or become subject to multiple appeals. That a case involves a matter such as child custody is a factor, but not a controlling one, in determining whether rule 1(d) should be applied. Certainly the fact that issues have already been briefed or the fact that the parties both want it cannot bear on the issue.

Much more crucial in our determination whether to grant permission under rule 1(d) is how close a question is presented on finality. Also of great importance is the likelihood that permission would have been granted on a timely request. On these important criteria, permission is inappropriate here. The question of finality, as mentioned, is not at all close; the order under challenge is plainly interlocutory. And there is no chance permission for an interlocutory appeal would

have been granted upon timely request.[2] These criteria greatly outweigh the only factor favoring a grant—the nature of the case.

We are not insensitive to the hardship that will flow from this determination. But to hold otherwise would draw us into bad precedent, setting aside an area in which the parties, deliberately or by lack of attention to a crucial detail, can commandeer the appellate process. A casual observer might misapprehend the source of this court's resolute insistence on maintaining exclusive control over the gate to an interlocutory appeal and in demanding in most cases a timely request for permission under rule 2(a). We do not see our position as in any way cavalier or stubborn. Counsel will be actuated, not by desire for an orderly trial or appellate process, but by their perceived interest of their client. We have learned from long experience in considering timely applications for permission under rule of appellate procedure 2, that counsels' focus on the matter is not the same as our focus.

The question nevertheless recurs: Why must these parties suffer under the circumstances? Should we not do justice by pointing out the omission, issuing a warning for future cases, and proceed to . the merits? The clear answer is that warnings alone will not change the pattern. *See Banco Mortgage Co.,* 351 N.W.2d at 787 ("We therefore must caution counsel for litigants who are dissatisfied with interlocutory rulings against relying on rule 1(c) as a means of avoiding the requirements of rule 2(a)."). The appeal must be, and it is, dismissed.

**APPEAL DISMISSED.**

All justices concur except CARTER, NEUMAN and SNELL, JJ., who dissent.

CARTER, Justice (dissenting).

There is no doubt that this appeal has been taken from an interlocutory ruling of the district court. It is probably also true that this court would not have granted an application to appeal in advance of final judgment under Iowa Rule of Appellate Procedure 2(a) had that been requested at the time the decision was filed. Nevertheless, I be-

---

**2.** Our standard for determining whether to grant permission to appeal under rule 1(d) is the same as under rule 2(a). *See Banco Mortgage Co.,* 351 N.W.2d at 787.

lieve that in the interest of an expeditious disposition of this important child custody case the court should decide this appeal on the merits. Consequently, I would grant permission to appeal at this time under rule 1(d).

In *Banco Mortgage Co. v. Steil,* 351 N.W.2d 784 (Iowa 1984), we considered a problem concerning whether our application of rule 1(d) has produced more appeals from interlocutory orders than would have been granted had permission to appeal been sought by the appellant at the outset. We stated in this regard:

> Although dismissal of an appeal at this stage is, arguably, economic waste, permitting the appeal to continue adds to the problem of piecemeal litigation and multiple appeals which the finality requirement is designed to prevent.

*Banco Mortgage Co.,* 351 N.W.2d at 786–87. In the present case, however, much more than economic waste is at stake as a result of dismissing the appeal. A decision to dismiss the appeal adversely impacts on the best interests of the children.

Our cases have consistently recognized the principle that the custodial status of children should be fixed as soon as possible after a marriage has been dissolved. *Schoonover v. Schoonover,* 228 N.W.2d 31, 34 (Iowa 1975); *Stouwie v. Stouwie,* 222 N.W.2d 435, 438 (Iowa 1974); *Jacobs v. Jacobs,* 216 N.W.2d 312, 314 (Iowa 1974); *Halstead v. Halstead,* 259 Iowa 526, 531–33, 144 N.W.2d 861, 863 (1966).

This appeal has been fully briefed and argued and has been submitted to this court for decision. In the process of doing this, several months have passed since the marriage was dissolved. The act of dismissing the appeal at this time will cause a further and inordinate period of delay in settling the child custody issue. That is sufficient reason for exercising our authority under rule 1(d) to hear the appeal on the merits.

NEUMAN and SNELL, JJ., join this dissent.